IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARY T. LARK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 07-BE-1890-S** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF DECISION

### I. INTRODUCTION

On January 17, 2006, the claimant, Mary Lark, applied for supplemental security income under Title XVI of the Social Security Act. (R. 13). The claimant alleges disability commencing on October 1, 2002 because of carpal tunnel syndrome, thyroid problems, acid reflux, an abnormal heart rhythm, degenerative joint disease, and migraine headaches. (R. 82, 170-75). On March 27, 2006, the Commissioner denied the claim, and on April 25, 2006, the claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. 13). At the hearing, the ALJ granted the claimant's motion to move the onset date of her alleged disability to January 12, 2006. (R. 13, 166). In a decision dated May 31, 2007, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for supplemental security income. (R. 20). On August 17, 2007, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 2). The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

In this appeal, the claimant argues that the ALJ (1) improperly discounted the medical opinion of Dr. Blake, and (2) failed to properly consider the side-effects of claimant's prescribed medications.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above question leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

When considering a claimant's medical records, the ALJ must state with particularity the weight he accorded to medical opinions and the reasons for according that weight. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ must give substantial weight to *treating* physicians' reports unless he has "good cause" to do otherwise, but does not have to give such deference to *consulting* physicians' reports. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Ultimately, the ALJ may reject any medical opinion for which substantial evidence is lacking. 20 C.F.R. at 927(d); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

## V.  FACTS

The claimant was forty-five years old at the time of the hearing and has a G.E.D. (R. 164). Her previous employment includes work as a bus detailer, retail greeter, cashier, cook, and bartender.  (R. 165-66).  The claimant alleges she is unable to work because of carpal tunnel syndrome, thyroid problems, acid reflux, an abnormal heart rhythm, degenerative joint disease, and migraine headaches.  (R. 82, 170-75).

*Physical Limitations Prior to the Claimant's Onset Date*

In 2002, Dr. James Coffey, an internist and treating physician, diagnosed the claimant with Graves disease,[1] hypertension, and degenerative joint disease.  (R. 129).  On May 2, 2003, Dr. Coffey reported that the claimant experienced left ankle pain and was also experienced knee, elbow, and shoulder pain.  (R. 121).

During 2003 and 2004, the claimant visited Cooper Green Hospital's emergency room several times complaining of lower back pain and pain in her right hip, right shoulder, and left ankle. The emergency room records indicate that physicians treated the claimant with pain medication and that she was alert and oriented during each visit.  (R. 108-10, 112-15, 118-20).

On June 10, 2005, Dr. Robert Slaughter, a treating physician examined the claimant and noted that she had carpal tunnel syndrome in both hands, but experienced greater pain in her right hand. He prescribed a cock-up splint for her right wrist.  (R. 87).  On September 9, 2005, the claimant visited Dr. Slaughter complaining of numbness and tingling in her left hand and he prescribed a cock-up splint for this wrist as well.  (R. 85).  During the September visit, Dr.

---

[1] Graves disease is a type of autoimmune disease that causes over-activity of the thyroid gland.

Slaughter noted that the claimant's carpal tunnel syndrome in her right hand had not improved since using the splint; he discussed the option of surgery with the claimant, but she was not interested. *Id*.

*Physical Limitations After the Claimant's Onset Date*

On March 16, 2006, at the request of the Disability Determination Service, the claimant visited Dr. Prakash C. Kansal, an endochronologist and consulting physician. (R. 131-32). Dr. Kansal noted that the claimant's chief complaints were pain in her left hip and pain in both of her hands, shoulders, and ankles. (R. 132). Dr. Kansal noted that the claimant's reflexes and sensation to touch in her upper extremities and right lower extremity were normal; however, she had decreased sensation to touch and pinpricks on the lateral part of her left foot and on her third, fourth, and fifth left toes. (R. 134). Her motor power was normal in all of her muscles except for her left third, fourth, and fifth toes where she had slight weakness. *Id*. The bones, joints, and muscle movements of her spine were normal. On extreme abduction and flexion of her upper extremities, she complained of pain, but otherwise her abduction, adduction and forward flexion in her upper extremities was normal. The claimant was slightly tender in her right shoulder joint, but Dr. Kansal reported that there was no swelling, redness or fluid in the joint. The claimant's elbow movements were normal, but her wrist joints and right wrist flexion and extension were slightly limited and painful; furthermore, her right wrist was tender on the dorsal surface. On both hands, the claimant's finger movements were normal; she could touch her fingertips with her thumb, could turn doorknobs, and could slowly pick up objects. The claimant's sensation to touch, pinpricks, vibration, and position in her hands was normal and her hand grip was good. Her straight leg raising was normal on both sides as was the movements of her hips, knees, and

ankles. Dr. Kansal reported no swelling in any of the claimant's joints and no tenderness in her ankles, knees, or toes.

Dr. Kansal's indicated that the claimant complained of pain in her various joints and appeared to have carpal tunnel syndrome. He reported that the claimant's carpal tunnel syndrome was worse in her right hand. Dr. Kansal noted that although the claimant mentioned using a cane when getting out of bed or standing for more than twenty to thirty minutes, she could walk without assistance and used the cane rarely; Dr. Kansal found no reason for the claimant to use the cane.

On April 17, 2006, the claimant visited Dr. James D. Blake, a family practitioner and consulting physician. Dr. Blake noted that the claimant's chief complaints were chronic back pain, chronic ankle pain, chronic hip and shoulder pain, and carpal tunnel syndrome. (R. 143). He noted that the claimant was alert and oriented and that her range of motion in all upper and lower extremity joints was normal. (R. 144). He also noted that her grip, seated leg raising, and fine motor movement was normal and that she had no muscle atrophy; he did note that she had decreased sensation in her left foot, moderate degenerative joint disease in her left hip, and mild degenerative joint disease in her ankles. *Id*. Dr. Blake indicated that the claimant experienced fatigue and weakness consistent with her underlying medical conditions; she also was at risk for falls and injuries because of her medications and pain. (R. 145). He noted that the claimant's carpal tunnel syndrome severe numbness and tingling in her upper extremities. He also noted that she had bilateral ankle pain from previous fractures in her ankles and had decreased sensory levels in her left foot possibly caused by a nerve or orthopedic problem. He indicated that follow up on these issues was necessary. *Id*.

Dr. Blake noted that during an eight-hour work day, the claimant could sit for three hours and stand or walk for a total of two hours. He also noted that she would never be able to push or pull, use her fingers to manipulate fine objects, reach for objects, work around hazardous machinery, or work around dust, allergens, or fumes; he indicated that she would occasionally be able to bend, stoop, climb stairs, and manipulate large objects; he also indicated that she would be able to operate motor vehicles frequently. (R. 148). Dr. Blake concluded that the claimant's pain was so severe that it could distract her from adequately performing work and daily activities; he indicated that physical activity could increase the claimant's pain such that she would abandon tasks and that side-effects from her medication could limit her effectiveness. (R. 148, 150).

*ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 13). The claimant testified that she experienced pain in her ankle as a result of two fractures. (R. 169). She testified that the emergency room doctors prescribed a "boot" for her to use when her pain prevents her from putting weight on her ankle; she wears the boot approximately one week each month. (R. 170-71). She testified that her ankle swells after walking on it for thirty-five to forty minutes and that the emergency room doctors advised her to treat the swelling by propping it higher than her heart; she props it up while she sleeps and for four to five hours each day. (R. 172-73).

The claimant also testified that she has degenerative joint disease in her right knee and experiences pain in her left hip and in both shoulders. (R. 173-74). She testified that she can raise her hands only to the height of her breasts. (R. 174). She also testified that she has not agreed to surgery on her wrists because there is no guarantee that it will be successful and she is

afraid. (R. 175-76). She testified that she experiences numbness in her hands and constant tingling in her fingers. (R. 176).

The claimant testified that with her medication, she experiences pain at a level of seven on a scale of ten provided she is not active; the pain is worse when she walks or stands and on rainy and cold days. She testified that she could sit for about thirty minutes before needing to get up and could walk casually for thirty to forty-five minutes before needing to sit down; without her boot, she can walk a half-block before needing to sit down. (R. 178, 182-83).

The claimant testified that she could not lift anything heavier than a glass of iced tea and would need to use both hands. (R. 183). She testified that a normal day involves caring for her three-year-old and five-year-old grandchildren until three or four o'clock. (R. 185-86). She testified that she is able to dress herself and care for her personal needs; she is able to drive a car in an emergency, but it hurts to turn the steering wheel.

After the claimant testified, the ALJ asked Dr. Russell, a vocational expert, to identify the claimant's past work experience. Dr. Russell indicated that the claimant had previously worked as a bus detailer, retail greeter, cashier, short order cook, and bartender. (R. 190). The ALJ asked Dr. Russell whether an individual with the claimant's age, education and past relevant work experience would be able to perform sedentary work with a sit-stand option that only required manual dexterity. Dr. Russell replied that the availability of jobs would be decreased by the claimant's ability to only occasionally bilaterally use her hands and that work at the sedentary exertional level having the bilateral use of the hands is very important. However, he did indicate that she could work as an automatic machine tender and that in Alabama there were approximately 1,500 to 2,000 such jobs available. (R. 190-91). He indicated that outside of this

job and a few cashier positions, the claimant would not have many other options at this level. He did indicate that in Alabama, there were approximately 1,000 to 1,500 cashier jobs available. The ALJ also asked the vocational expert whether the claimant's need to elevate her ankle would preclude the jobs he had identified. (R. 191). The vocational expert replied that it would preclude these jobs. *Id*.

*The ALJ's Decision*

On May 31, 2007, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 20). The ALJ found that (1) the claimant had not engaged in substantial gainful activity since the alleged onset of her disability and (2) that the claimant's carpal tunnel syndrome and degenerative joint disease qualified as severe impairments. (R. 15). He concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 15-16).

Next, the ALJ considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform past relevant work or other work substantially available in the national economy. The ALJ found that although the claimant did suffer from severe impairments, her statements concerning the intensity, persistence and limited effects of those symptoms were not entirely credible. (R. 17-18).

To support his conclusion, the ALJ compared the claimant's testimony with the objective medical evidence. The ALJ noted that at the hearing, the claimant testified that she wore a boot for one week each month; however, the ALJ noted that the claimant's treatment notes did not show a prescription for such a boot or a discussion of its use. (R. 18). The ALJ also noted that the claimant's medical records did not support her testimony that her ankle and knee were

frequently swollen. *Id*. Furthermore, the ALJ noted that the claimant declined surgery for her carpal tunnel syndrome even though she testified that she suffered significant limitations from the impairment. *Id*. Finally, the ALJ noted that the claimant's treatment notes indicated some limitations from her carpal tunnel syndrome, but did not show that it would prevent the occasional use of her hands. *Id*.

Next, the ALJ considered the treatment notes of Dr. Blake and Dr. Kansal. (R. 18). The ALJ noted that Dr. Blake found that the claimant experienced moderately severe pain, side-effects from medication, and fatique and weakness. *Id*. He also noted that the claimant could only sit, stand, and walk for a combined five hours each day. *Id*. The ALJ found, however, that the objective medical evidence did not support Dr. Blake's opinions. *Id*. The medical records did not mention that the claimant suffered such severe pain, fatigue, weakness, or medication side-effects, nor did it indicate extreme restrictions in her ability to move. *Id*. Furthermore, the ALJ noted that Dr. Kansal's findings did not indicate any side-effects from medication, nor did the claimant tell Dr. Kansal that she was experiencing side-effects. *Id*.

The ALJ found that Dr. Blake's opinion regarding the claimant's severe limitations were inconsistent with his own medical findings; thus, the ALJ concluded that Dr. Blake "accepted the claimant's allegations of her problems over the objective evidence." *Id*. Consequently, the ALJ gave little weight to Dr. Blake's opinions and instead gave substantial weight to Dr. Kansal's opinions. *Id*.

Finally, the ALJ concluded that the claimant has the residual functional capacity to perform sedentary work allowing a sit-stand option and requiring only occasional bilateral manual dexterity. (R. 18). Based on these findings and testimony from the vocational expert, the ALJ

concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 19-20).

## VI.  DISCUSSION

**1.      The ALJ properly discounted Dr. James Blake's medical opinion.**

The claimant argues that the ALJ improperly discounted Dr. James Blake's medical opinion. To the contrary, this court finds that the ALJ properly accorded "little weight" to Dr. Blake's opinion and specifically stated his reasons for according that weight; thus, substantial evidence supports his decision.

When considering a claimant's medical records, the ALJ must state with particularity the weight he accorded to medical opinions and the reasons for according that weight. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ must give substantial weight to treating physicians' reports unless he has "good cause" to do otherwise; however, he does not have to give such deference to consulting physicians' reports. *Crawford v. Comm'r*, 363 F.3d 1155, 1159 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ generally accords more weight to opinions that are consistent with the relevant evidence and the record as a whole; ultimately, however, he may reject any medical opinion for which substantial evidence is lacking. 20 C.F.R. at 927(d); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In this case, the ALJ specifically stated that he gave "little weight" to the medical opinions of Dr. Blake because they were "inconsistent with the great weight of the medical evidence and also with his own objective findings which reveal[ed] many 'normal' test results." Furthermore, the ALJ stated that he gave "substantial weight" to Dr. Kansal's opinions because his findings were consistent with the "great weight of the medical evidence of record." The ALJ noted that the

medical evidence did not indicate the fatigue and weakness, pain, medication side-effects, or extreme restrictions in movement that Dr. Blake opined the claimant experienced. He also noted that Dr. Kansal did not report any of these symptoms. The ALJ reasoned that were the claimant's impairments as severe as she alleged, objective medical evidence would have substantiated that severity, and it did not.

The claimant argues that the ALJ erred in accepting Dr. Kansal's opinion and discounting Dr. Blake's opinion because Dr. Kansal examined the claimant only one time. Although Dr. Blake and Dr. Kansal each examined the claimant only once, the ALJ may accord more weight to opinions that are consistent with the entire record and may reject any opinion that lacks substantial evidence. Consequently, this court concludes that the ALJ properly justified his evaluation of Dr. Blake's opinion and, thus, had substantial evidence to support his decision.

2. **The ALJ properly applied the Eleventh Circuit's three-part pain standard to the claimant's allegation of medication side-effects.**

In evaluating pain and other subjective complaints, the ALJ must apply the Eleventh Circuit's three-part pain standard. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the claimant's testimony be accepted as true. *Id*.

In this case, the claimant argues that the ALJ failed to properly consider the side-effects from her medication. The claimant correctly asserts that the ALJ should consider the side-effects of medication. 20 C.F.R. 404.1529(c)(3); *Parker v. Bowen*, 793 F.2d 1177, 1179 (11th Cir. 1986); however, the claimant fails to note that, like other subjective symptoms, allegations of medication side-effects must be supported by objective medical evidence. The ALJ properly noted that, although Dr. Blake opined the claimant suffered side-effects from her medication, the objective medical evidence failed to support this finding. Thus, this court finds that the ALJ properly considered the side-effects of the claimant's medication and that substantial evidence supports his decision to discount them.

## VII. CONCLUSION

For the reasons stated, the court finds that substantial evidence supports the Commissioner's decision, and thus, AFFIRMS it.

The court will enter a separate order consistent with this Memorandum Opinion.

DONE and ORDERED this 17th day of August, 2009.

*Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE